# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LATANYA MOORE, | ) |
| Plaintiff, | ) |
| | ) 17 C 4716 |
| v. | ) |
| | ) Judge Charles P. Kocoras |
| MB FINANCIAL BANK, N.A., | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant MB Financial Bank, N.A.'s ("MB Financial") Rule 12(b)(6) motion to dismiss Plaintiff LaTanya Moore's ("Moore") amended complaint. For the following reasons, the Court grants the motion.

## STATEMENT

Moore brings this lawsuit against MB Financial under the National Bank Act ("NBA"). 12 U.S.C. §§ 85, 86. According to Moore, MB Financial violated the NBA by charging her a continuous daily overdraft fee ("CDOF") for maintaining a continued negative overdrawn balance on her checking account.

Like many banks, MB Financial charges customers a CDOF for each day that a checking account has a negative balance, beginning on the second consecutive calendar day and continuing until the sixteenth consecutive calendar day. The amount of the CDOF, set forth on the Personal Banking Customer Fee Schedule, is $6.50 per

day. Moore alleges that MB Financial charged her the CDOF five times in May 2017, totaling $32.50.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, taken as true, "plausibly suggest that the plaintiff has a right to relief." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599-600 (7th Cir. 2016). The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party, *id.*, but "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MB Financial contends that Moore's single claim for a usurious interest charge under the NBA should be dismissed because the "CDOF is a *service fee*, not interest under the NBA." Specifically, MB Financial argues that Moore incurred pre-determined flat fees for failing to remedy the status of her checking account as overdrawn. We agree, and dismiss Moore's amended complaint.

While the NBA does not expressly define "interest," it is "understood to include any compensation allowed by law or fixed by the parties for the use or forbearance of money, or the price which is fixed for the use of money." *Shaw v. BOKF, Nat. Ass'n*, 2015 WL 6142903, at *2 (N.D. Okla. Oct. 19, 2015). The Office

of the Comptroller of the Currency[1] ("OCC"), the primary regulator of national banks, has defined interest "as used in 12 U.S.C. § 85" of the NBA to include:

> any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, over limit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

12 C.F.R. § 7.4001(a).

Section 7.4002 incorporates the definition of "interest" from § 7.4001(a) to distinguish between "interest" and "non-interest" charges, and charges and fees that constitute "interest" are expressly governed by § 7.4001. 12 C.F.R. § 7.4002(c). In 2007, the OCC issued an interpretive letter in which it expressly described overdraft fees as "non-interest charges . . . part of or incidental to the business of receiving deposits." Interpretative Letter No. 1082, 2007 WL 5393636, at *2 (May 17, 2007). The OCC further stated that such fees were authorized under 12 C.F.R. § 7.4002(a), the "non-interest" provision. *Id*.

In accordance with the OCC regulations, all district courts, except for one[2], to consider this issue have held that a CDOF is not interest. Additionally, the Eleventh

---
[1] The OCC is entitled to substantial deference regarding interpretation of its regulations under the NBA. *Smiley v. CitiBank, N.A.*, 517 U.S. 735, 739 (1996).
[2] *Farrell v. Bank of Am., N.A.*, 224 F. Supp. 3d 1016 (S.D. Cal. 2016).

3

Circuit, the only federal appellate court to have considered the question, concluded that CDOFs are not interest. *See McGee v. Bank of Am., N.A.*, 674 F. App'x 958 (11th Cir. 2017), *aff'g*, 2015 WL 4594582 (S.D. Fla. July 30, 2015); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593 (D.S.C. 2015); *Shaw v. BOKF, N.A.*, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015); *Cargile v. JP Morgan Chase & Co.*, 2011 WL 17608 (E.D. Mich. Jan. 4, 2011). While none of these cases are binding on this Court, we join the majority of federal courts that have considered this issue and find that overdraft charges on a deposit account do not come within the OCC's definition of interest.

The CDOF charges at issue here, like the overdraft fees in *McGee*, are not interest under the ordinary meaning of the term, or under the NBA. Instead, the charges are "flat fees contingent upon a customer's failure to remedy an overdrawn account, rather than a payment for the use of money." *McGee*, 2015 WL 4594582 at *3. In addition, because the extended overdraft charges were incurred as part of maintaining a deposit account, not a credit transaction, the extended overdraft charges cannot be considered interest under the NBA. *Id*. Similar to the court in *McGee*, we find that the CDOF is a non-interest charge under § 7.4002, rather than "interest" under § 7.4001. *Id*. at *3–4. Because the charges here are not "interest," they cannot support Moore's claim for usurious interest under the NBA. *Cargile v. JP Morgan Chase & Co.*, 2011 WL 17608 at *5. Thus, we dismiss her amended complaint.

In the interest of completeness, we also find that even if the CDOF were "interest," Moore still would not have a claim under Illinois law. Moore does not dispute that the NBA permits national banks to charge whatever rate of interest state banks can charge under state law. *See* 12 C.F.R. 7.4001(b); *Giannangeli v. Target Nat'l Bank, N.A.*, 543 F. App'x 785, 787-88 (10th Cir. 2013). Section 4 of the Illinois Interest Act states that "[i]t is lawful for a state bank . . . to receive . . . and collect interest and charges at any rate or rates agreed upon by the bank or branch and the borrower." 815 ILCS 205/4(1). Moore argues that MB Financial has not satisfied Section 4 because MB Financial "never identified the CDOF as an interest rate," making it "impossible" for Moore to agree to pay the stated rate. However, when Moore opened her account she agreed to "the terms of this account and the schedule of charges," which included the CDOF. Accordingly, it was lawful for MB Financial to assess the CDOF "charge" as agreed upon between MB Financial and Moore in her account documents.

## CONCLUSION

For the aforementioned reasons, the Court grants MB Financial's motion to dismiss with prejudice. It is so ordered.

Dated: 11/16 /2017

Charles P. Kocoras
United States District Judge

5